**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Alice XANDER, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 3, 2011.

Filed Feb. 18, 2011.

Sandra F. McClure, Assistant District Attorney, Easton, for Commonwealth, appellant.

Gregory W. Paglianite, Easton, for appellee.

BEFORE: SHOGAN, MUNDY, and FITZGERALD,* JJ.

OPINION BY MUNDY, J.:

The Commonwealth appeals from the February 2, 2010 judgment of sentence wherein the trial court granted Appellee Alice Xander's motion for judgment of acquittal with regard to the enhanced DUI penalty to be imposed by the trial court pursuant to 75 Pa.C.S.A. § 3804(c). This penalty was to be imposed in connection with Appellee's DUI conviction for which the trial court imposed a sentence of five days to six months' imprisonment.[1] After careful review, we affirm.[2]

The lengthy facts as set forth by the trial court in its June 29, 2010 trial court opinion can be summarized as follows. On October 5, 2008, Appellee was pulled over by Wilson Borough Police Department at approximately 11:00 p.m. Officer Frederick Lahovski observed Appellee had slow-moving eyes, delayed reactions, and slurred speech. When Officer Lahovski approached Appellee, she became agitated and upset, prompting him to call for backup. Appellee refused Officer Lahovski's requests to conduct a field sobriety test and was placed under arrest for driving under the influence.

Officer Lahovski transported Appellee to the Bethlehem DUI Center for a blood draw. Appellee was noncompliant, yelling derogatory remarks at Officer Lahovski, and kicking and punching the partition in the police cruiser. As a result, Officer Lahovski radioed the DUI Center to warn them that he would need assistance with Appellee upon arrival. Officer Eric Kaintz met Officer Lahovski in the garage and both officers attempted to remove Appellee from the vehicle. Appellee began kicking and flailing her legs and, as a result, struck Officer Kaintz with the police cruiser door. Unable to control Appellee, Officer Lahovski tased her with the drive stun function of his taser device. Appellee calmed down and the officers were able to get Appellee inside the building to the processing center.

A DVD recording of Appellee's interaction with Officer Kaintz and the phlebotomist was presented at trial as a Commonwealth exhibit. The video and audio recording shows Appellee repeatedly asking for her "attorney rights" and informing Officer Kaintz and the phlebotomist that she will not answer any questions. *See* Certified Record (C.R.) at 36; Commonwealth Exhibit 1. Officer Kaintz attempts to explain to Appellee that she does not have the right to an attorney during processing, as they are not asking guilt-seeking questions, and are only attempting to book her and conduct a blood draw. *Id.* Appellee informs Officer Kaintz and the phlebotomist that "you ain't f***ing taking no blood test on me." *Id.* Throughout the DVD recording, Appellee indicates her unwillingness to proceed any further, and at the conclusion of the video, Appellee is instructed "this concludes the processing of Alice Xander, we are done."[3] *Id.*

* Former Justice specially assigned to the Superior Court.

1. 75 Pa.C.S.A. § 3802(a)(1).

2. Despite being granted an extension of time by this Court, Appellee has failed to file a brief in this matter.

3. It is unclear from the video if it is Officer Kaintz or the phlebotomist who is speaking at this point.

On December 3, 2009, a jury trial commenced. The Commonwealth presented evidence that Appellee had been driving under the influence of alcohol, and averred that Appellee had refused chemical testing. N.T., 12/4/09, at 12. At the conclusion of the Commonwealth's case in chief, Appellee's counsel made a motion for a judgment of acquittal to preclude the Commonwealth from seeking an enhanced penalty pursuant to § 3804(c) because Appellee had not been provided with refusal warnings as required by 75 Pa.C.S.A. § 1574(b)(2). After a conference with both sides, the trial court determined it was not the proper time to make this motion and denied it without prejudice. Trial Court Opinion, 6/29/10, at 7.

On December 4, 2009, the jury reached a verdict and the following exchange took place on the record.

[The Clerk]: Madam foreman, in the matter joined between the Commonwealth of Pennsylvania versus Alice Xander in criminal action 1052 of 2009 as to the crime of driving under the influence how does the jury find?

[Madam Foreman]: We found guilty.

[The Clerk]: As to the interrogatory if you find the defendant guilty of driving under the influence do you find the defendant refused to give a sample for testing, how do you find?

[Madam Foreman]: Guilty

[The Court]: Is that a[ ] unanimous verdict?

[The Jury]: Yes.

4. We note the transcript from the afternoon session on December 4, 2009, is mislabeled as December 3, 2009.

5. Generally, an appeal seeking a judgment of acquittal is raised in a post-sentence motion after the judgment of sentence has been imposed. See Pa.R.Crim.P. 720(B)(1)(a)(ii). However, in the instant matter, the trial court

N.T., 12/4/09, at 109.[4] Thereafter, the trial court deferred sentencing and ordered a pre-sentence investigation report (PSI).

On December 10, 2009, Appellee filed a post-trial motion for "Judgment of Acquittal After Verdict of Guilty" re-raising her claim that the Commonwealth should have been precluded from seeking an enhanced penalty pursuant to § 3804(c) because Appellee had not been given refusal warnings pursuant to § 1574(b)(2). C.R. at 19. On February 2, 2010, the trial court held a sentencing hearing at which it granted Appellee's motion "and determined that the Commonwealth did not introduce sufficient evidence to warrant imposing the enhanced penalties proscribed in § 3804(c)." Trial Court Opinion, 6/29/10, at 9. The trial court then imposed a sentence of five days to six months' imprisonment.[5] Id.

On February 24, 2010, the Commonwealth filed a timely notice of appeal.[6] The Commonwealth raises the following issues on appeal.

A. Whether the police officer is required to provide an arrestee with 75 Pa.C.S. Section 1547(b) refusal warnings before the arrestee may receive the enhanced penalties as enunciated in section 3804 of the driving under the influence of alcohol or controlled substance statute.

B. Whether it would be futile to continue with the DUI Center processing since the Appellee was so unruly, argumentative and uncooperative[,]

entertained the motion prior to sentencing, and imposed its sentence accordingly. Therefore, the Commonwealth's appeal properly lies from the judgment of sentence entered on February 2, 2010.

6. The Commonwealth and the trial court have complied with Pa.R.A.P.1925.

and Appellee demanded that the DUI processing be stopped.

Commonwealth's Brief at 2.

■ The Commonwealth argues the trial court erred in granting Appellee's motion for judgment of acquittal on the basis that refusal warnings are required by § 1547(b) before the Commonwealth can seek an enhanced penalty pursuant to § 3804(c) for refusing to submit to a chemical blood test. In other words, the Commonwealth argues that Officer Kaintz was not required to prove he had administered refusal warnings to Appellee pursuant to § 1547(b) before the jury could determine Appellee had refused to submit to chemical testing, and the trial court could impose the enhanced penalties under § 3804(c).

■ Our standard of review when considering the Commonwealth's claim that trial court erred in granting Appellee's motion for judgment of acquittal is as follows.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Hutchinson,* 947 A.2d 800, 805 (Pa.Super.2008).

Herein, our analysis necessitates we interpret 75 Pa.C.S.A. §§ 1547(b) and 3804(c) to determine if the Commonwealth bore the burden of proving Appellee received refusal warnings in order for the enhanced DUI penalty to be applied.

"[A]s in all matters requiring statutory interpretation, we are guided by the provisions of the Statutory Construction Act, 1 Pa.C.S.[A.] § 1501 *et seq.*" *Swords v. Harleysville Insurance Companies,* 584 Pa. 382, 883 A.2d 562, 567 (2005).

Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S.[A.] § 1921(a). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.[A] § 1921(b). *Commonwealth v. Arroyo,* 991 A.2d 951, 955 (Pa.Super.2010).

We begin by examining the text of 75 Pa.C.S.A. § 1547, **Chemical testing to determine amount of alcohol or controlled substance.** More specifically, we look to subsection (b) **Suspension for refusal.**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

. . .

(2) **It shall be the duty of the police officer to inform the person that:**

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) **if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).**

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S.A. § 1547(b) (emphasis added).

The words of the statute are "clear and free from all ambiguity[.]" *See Arroyo, supra.* The statute states that it "**shall be**

the duty of the police officer to **inform the person that** ... if the person refuses to submit to chemical testing ... upon conviction ... the person will be subject to the penalties provided in § 3804(c)[.]" 75 Pa.C.S.A. § 1547(b) (emphasis added). Clearly, the statute imposes upon the arresting authority the obligation to advise a defendant of the ramifications of his or her refusal to submit to chemical testing.

We turn now to 75 Pa.C.S.A. § 3804, which sets forth the penalties for violating § 3802(a).[7] Specifically, § 3804(c) states the following.

> **(c) Incapacity; highest blood alcohol; controlled substances.**—An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows[.]
>
> ...

75 Pa.C.S.A. § 3804(c).

The trial court concedes, "[h]ere, neither statute expressly states that the imposition of the enhanced penalties in Section 3804(c) is conditioned upon the receipt of sufficient warnings under Section 1547(b)." Trial Court Opinion, 6/29/10, at 15. However, the trial court goes on to reason, "[w]e respectfully submit that the General Assembly's inclusion of the enhanced penalties warning in § 1547(b)(2)(ii) would be meaningless and superfluous if individuals could receive the enhanced penalties even though police did not actually provide the necessary warnings." *Id.* We are inclined to agree.

The trial court comprehensively sets forth the legislative history of 75 Pa.C.S.A. § 1547(b) in its thorough and well reasoned opinion.

Prior to September 20, 2003, section 1547(b) only required the police to inform an individual driver suspected of Driving Under the Influence (and before seeking to obtain a blood sample) that the individual's license would be suspended upon that individual's refusal to submit to chemical testing. *See* 75 Pa. C.S. § 1547(b), Historical and Statutory Notes; Act of Sept. 30, 2003, P.L. 120, No. 24 §§ 9, 10, effective Feb. 4, 2004. Thus, Section 1547(b) "required the police to tell the arrestee of the consequences of refusing a chemical test so the arrestee could make a knowing and conscious choice." *Pennsylvania Dep't of Transp., Bureau of Driver Licensing v. Weaver* [590 Pa. 188], 912 A.2d 259, 263 (Pa.2006); *see Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell* [521 Pa. 242], 555 A.2d 873, 877–78 (Pa.1989) (explaining that "[t]he law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice[,]" and determining that "it is appropriate to place the duty of [the police] to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test").

After the General Assembly amended the implied consent law, section 1547(b) also required police officers to warn an individual that if they refused chemical testing, upon conviction or plea for violating section 3802(a)(1), the individual would be subject to the enhanced penal-

---

**7.** We note, Appellee was charged with and convicted of violating 75 Pa.C.S.A. § 3802(a)(1). **General impairment.** Section 3804 exclusively governs the penalties for violating § 3802.

ties provided in section 3804(c). When the General Assembly amended section 1547(b) in September 2003 to include the enhanced penalties warning, the General Assembly also enunciated those enhanced penalties by creating Section 3804(c). 75 Pa.C.S. § 3804, Historical and Statutory Notes.

Trial Court Opinion, 6/29/10, at 12–13 (footnote omitted).

The trial court goes on to say, "because the General Assembly specifically included a requirement in § 1547(b)(2)(ii) that the police warn arrestees of the enhanced penalties for a refusal, a 'refusal' for purposes of § 3804(c) necessarily requires a knowing refusal insofar as the police must have provided the arrestee with the warnings beforehand." *Id.* at 17.

Based on the foregoing, we conclude that Officer Lahovski was required to provide Appellee with § 1547(b) warnings before Appellee could receive the enhanced penalties for DUI pursuant to § 3804(c). We therefore agree with the trial court that it was precluded from sentencing Appellee in accordance with § 3804(c), and conclude the trial court correctly sentenced Appellee based on her conviction for violating § 3802(a)(1).

█ We turn now to the Commonwealth's second issue in which it avers that even if "the police officer had a duty to warn [Appellee] of the consequence of her refusal to submit to the chemical test pertaining to the enhanced penalties for a refusal under section 3804[,] this duty was excused because the appellee was so unruly, argumentative and uncooperative." Commonwealth's Brief at 18. The Commonwealth relies on the "frustration of purpose" doctrine for the proposition that Appellee's behavior prevented Officer Kaintz from being able to warn Appellee of her rights pursuant to § 1547(b). While we in no way condone or sanction the conduct of Appellee, we decline to find her behavior prevented Officer Kaintz from administering the warnings required by § 1547(b). Thus, we disagree with the Commonwealth's contention.

The trial court cites a plethora of cases in which this Court has determined a motorist's conduct constitutes refusal to submit to chemical testing. Trial Court Opinion, 6/29/10, at 19–20. Notably, in almost every instance, the officers try, in many circumstances repeatedly, to explain the consequences of refusing chemical testing on an uncooperative motorist. The trial court herein notes, however, that the facts before it are distinguishable from this line of cases in three ways. First, Officer Kaintz never **attempted** to read Appellee the § 1547(b) warnings and request a blood draw, as Appellee would not ever answer the basic booking questions asked of her. Trial Court Opinion, 6/29/10, at 21–22. This finding is supported by the DVD offered by the Commonwealth and viewed by the trial court as well as this Court. Second, "there [was] nothing about [Appellee]'s behavior that was so disruptive that the officer could not have read her implied consent warnings[.]" *Id.* at 22. Third, "the entire process lasted only three minutes and thirteen seconds" and that "[a]lthough [Appellee] (again, wrongly) claimed she was entitled to counsel before responding to the routine booking questions, she appeared to listen to the officer's questions and respond thereafter, albeit with an incorrect concept of the law." *Id.*

Based on our own independent review of the DUI processing DVD, we agree with the trial court's conclusion that "[A]ppellee's conduct did not alleviate the officer's responsibility to provide the warnings required by Section 1547(b)." *Id.* at 23. We therefore conclude the Commonwealth's second issue fails.

Accordingly, we conclude that Appellee had to be warned pursuant to § 1547(b) about the consequences of refusing a blood draw in order to be eligible for an enhanced penalty pursuant to § 3804(c). Additionally, we conclude that Appellee's conduct was not so egregious as to relieve Officer Kaintz of his duty to warn her of the consequence of her refusal.

Therefore, we affirm the February 2, 2010 judgment of sentence wherein the trial court (1) granted Appellee's motion for judgment of acquittal on the enhanced DUI penalty to be imposed by the trial court pursuant to § 3804(c), and (2) imposed a sentence of five days to six months' imprisonment relative to her unchallenged conviction for DUI.

Judgment of sentence affirmed.