**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jason C. BARR, Appellant.**

Superior Court of Pennsylvania.

Submitted July 1, 2013.
Filed Oct. 22, 2013.

Scott A. White, Public Defender, Seneca, for appellant.

Mark T. Aaron, District Attorney, Clarion, for Commonwealth, appellee.

BEFORE: LAZARUS, OLSON and COLVILLE,* JJ.

OPINION BY OLSON, J.:

Appellant, Jason C. Barr, appeals from the judgment of sentence entered on November 14, 2012. We vacate Appellant's judgment of sentence in part and remand for a new trial, limited to the issue of whether Appellant "refused" to submit to a chemical blood test.

At approximately 8:30 p.m. on September 14, 2011, Appellant was involved in a single vehicle accident where both he and his passenger were injured. Later, while Appellant was being treated in a hospital, the Pennsylvania State Police arrested Appellant and charged him with driving under the influence of alcohol ("DUI"),[1] and a variety of summary offenses.

Appellant proceeded to a trial by jury. On the morning of trial, Appellant's counsel proffered an oral motion *in limine* and sought to preclude the admission of the "DL–26 form" that was signed by Appellant.[2] As the trial court explained: "[s]ince the Commonwealth failed to make the DL–26 form available to [Appellant's] counsel prior to the morning of trial, [the trial court] ruled in favor of [Appellant] and [held that] the DL–26 form was not admissible [at trial]." Trial Court Opinion, 1/31/13, at 1.

During trial, Pennsylvania State Police Trooper Patrick S. Berggren testified that he interviewed Appellant in the hospital approximately one hour and 45 minutes after the accident. N.T. Trial, 10/31/12, at 54–55 and 61. According to Trooper Berggren, after observing Appellant in the hospital, he "knew" that Appellant was "highly intoxicated" and incapable of safely operating his vehicle, as Appellant "had bloodshot eyes, slurred speech, a strong odor of alcohol coming off of him, and [Appellant exhibited] mood swings." *Id,* at 55 and 57–58.

Trooper Berggren testified that he arrested Appellant for DUI, requested that Appellant "submit to a chemical test of his blood to determine blood alcohol," and

---

* Retired Senior Judge assigned to the Superior Court.

1. 75 Pa.C.S.A. § 3802(a)(1).

2. Pennsylvania's "DL–26 form" is issued by the Pennsylvania Department of Transportation and is titled "Chemical Testing Warnings and Report of Refusal [to] Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code in Violation [of] Section 3802 (relating to driving under the influence of Alcohol or Controlled Substance)." As our Commonwealth Court has summarized:

   The DL–26 [f]orm provides the following information: (1) the licensee is under arrest for DUI in violation of Section 3802(a) of the Vehicle Code, 75 [Pa.C.S.A.] § 3802(a); (2) the officer is requesting a chemical test of a particular type (blood, urine, etc.); (3) it is the officer's duty to inform the licensee that, if the licensee refuses to submit to the chemical test, the licensee's operating privi-

leges will be suspended for at least one year, that if the licensee refuses and is convicted [of] or pleads guilty to violating Section 3802(a) of the Vehicle Code (related to impaired driving), the licensee is subject to more severe penalties, the same as [if] he [were] convicted of driving with the highest rate of alcohol; and (4) it is the officer's duty to inform the licensee that the licensee does not have the right to speak with an attorney, or anyone else, before deciding whether to submit and that any request to speak to an attorney or anyone else after being provided the warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of the licensee's operating privileges and other enhanced criminal penalties if convicted of impaired driving. *Sitoski v. Commonwealth, Dep't of Transp.,* 11 A.3d 12, 15 n. 2 (Pa.Cmwlth.2010).

orally provided Appellant with both the "implied consent" and *"O'Connell"* warnings.[3,4] *Id*, at 55–57. Specifically, Trooper Berggren testified:

> I advised [Appellant] that ... it's implied in Pennsylvania [that Appellant must] give blood, breath, or urine, and if [Appellant] did not, that his license would be suspended. He would have stricter penalties and, also that he ... could not talk to anyone or an attorney before answering me whether he would do that or not.

*Id.* at 56–57.

Trooper Berggren testified that Appellant appeared to understand both the implied consent and *O'Connell* warnings. *Id.* at 57. Nevertheless, as Trooper Berggren testified, Appellant responded to the chemical test request by "just answer[ing] that he wanted his attorney." *Id*, Trooper Berggren again informed Appellant that the demand for an attorney constituted a refusal of the chemical test. *Id*, Appellant, however, again simply "said he wanted his attorney." *Id*,

During trial, Appellant neither stipulated nor admitted to receiving the implied consent warnings. Indeed, during the cross-examination of Trooper Berggren, Appellant's counsel extensively questioned the trooper on whether the trooper ever provided Appellant with the requisite warnings. *See id*, at 62–64.

At the conclusion of the evidentiary presentation, Appellant's counsel requested that the trial court instruct the jury on the implied consent warnings, pursuant to 75 Pa.C.S.A. § 1547(b). *Id*, at 125. While counsel did not necessarily articulate the relevancy of the particular request, the trial court understood that the proposed jury instruction was "part of the instruction concerning the refusal" of Appellant to submit to chemical testing. *See id*, at 127–128.

---

**3.** The "implied consent" warnings originate in 75 Pa.C.S.A. § 1547. Although we will discuss Section 1547 in greater detail below, at this point we note that, in Pennsylvania, drivers impliedly consent to a chemical test of "breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving ... a vehicle" under the influence of alcohol or a controlled substance. 75 Pa.C.S.A. § 1547(a)(1). Where an officer requests that an individual submit to chemical testing, Section 1547(b)(2) requires that the officer warn the person: "the person's operating privilege will be suspended upon refusal to submit to chemical testing" and "if the person refuses to submit to chemical testing, upon conviction or plea for violating [75 Pa.C.S.A. §] 3802(a)(1), the·person will be subject to the penalties provided in [75 Pa.C.S.A. §] 3804(c) (relating to penalties)." 75 Pa.C.S.A. § 1547(b).

**4.** The *O'Connell* warnings were first pronounced in *Commonwealth, Department of*

*Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In a later opinion, our Supreme Court explained both the *O'Connell* warnings and the reasoning behind the warnings:

> in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the *O'Connell* warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his *Miranda* rights.

*Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539, 545 (1996).

The trial court denied Appellant's requested jury instruction. *Id*, at 127–128. The trial court then instructed the jury on the elements of DUI and on whether Appellant "refused" to submit to chemical testing. With respect to the issue of "refusal," the trial court instructed the jury as follows:

> The Commonwealth contends that [Appellant] refused to give a sample of his blood for testing. A person can express refusal in words, or he can demonstrate refusal by uncooperative conduct. You should consider everything said and done by the police and [Appellant] and all the surrounding circumstances at the time of the alleged refusal when determining whether [Appellant] did, in fact, refuse to give the sample.

> The Commonwealth argues that the testimony tending to show that [Appellant] refused to give a sample of his blood indicates that he was conscious that he was guilty of driving under the influence. [Appellant's] attorney argues that he did not refuse to give the sample, or this evidence means no such thing.

> If you believe that [Appellant] was asked for and refused to give a sample of his blood for testing, you may consider that fact along with all the other relevant evidence when you are deciding whether [Appellant] was under the influence of alcohol. Give [Appellant's] refusal whatever weight and meaning you think it deserves.

> If and only if you find that the Commonwealth has proven the[ ] two elements of driving under the influence beyond a reasonable doubt, you must then decide whether the Commonwealth has proven the following by checking the appropriate line yes or no on the verdict form. The additional element is that [Appellant] refused to give a blood sample for testing. You must consider this additional element separately and indicate by checking the yes or the no line on the verdict slip whether the Commonwealth has proven that additional element beyond a reasonable doubt.

N.T. Trial, 10/31/12, at 138–139.[5]

The trial court then provided the jury with the following verdict slip:

### VERDICT

AND NOW, to-wit: October 31, 2012, we the Jurors empanelled in the above case, find:

Driving Under the Influence of Alcohol—
Incapable of Safe Driving

_____

If you find the Defendant guilty, then answer the following Question by placing a mark next to your answer:

Did the Defendant refuse to give a
blood sample for testing?     Yes  _____  No  _____

Verdict Slip at 1 (internal bolding and italicization omitted).

The jury rendered its verdict and concluded that Appellant was guilty of DUI and that Appellant refused to give a blood

---

**5.** The trial court's jury instruction on "refusal" was taken from Pennsylvania's Suggested Standard Criminal Jury Instruction § 17.6502C. This section is entitled "Relevance of Refusal to Submit to Testing." Pa. S.S.J.I. (Criminal) § 17.6502C (2012).

sample for testing. N.T. Trial, 10/31/12, at 152–154.

Prior to sentencing, Appellant's counsel filed a post-trial motion and claimed that the trial court erred in failing to submit, to the jury, the factual issue of whether Appellant was properly given his implied consent warnings. Appellant's Post–Trial Motion, 11/1/12, at 1. Appellant argued:

> Because a reading of the [implied consent] warnings are statutorily required in order for a defendant to be found to have made an informed refusal of a blood test, [see] 75 Pa.C.S.A. § 1547(b)(ii), Commonwealth v. Xander, 14 A.3d 174, 178 [ (Pa.Super.2011) ], and because the refusal to submit to a blood test caused an increase in the penalties to be suffered by [Appellant], a finding of fact by the jury beyond a reasonable doubt was required. Apprendi v. New Jersey, 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ].... If no finding of fact is made by a jury as to a fact that would increase penalties of a sentence[,] a violation of due process has occurred.

Appellant's Post–Trial Motion, 11/1/12, at 1.

The trial court denied Appellant's motion on November 14, 2012 and the case proceeded to sentencing. During sentencing, it was noted that the current DUI conviction constituted Appellant's second DUI conviction within the preceding ten years. N.T. Sentencing, 11/14/12, at 16. Therefore, as this was Appellant's second DUI conviction, Appellant's refusal to submit to the chemical test increased the grade of Appellant's DUI conviction from an ungraded misdemeanor to a misdemeanor of the first degree. Compare 75 Pa.C.S.A. § 3803(b)(1) with § 3802(b)(4).

On November 14, 2012, the trial court sentenced Appellant to a standard range sentence of 30 to 60 months' imprisonment. Appellant filed a timely notice of appeal and now claims: [6]

> ▮ Did the [trial] court err in denying [Appellant's] proposed jury instructions suggesting that the jury make a factual finding that [Appellant] was read his implied consent warnings of enhanced punishment/license suspension?

> ▮ Did the [trial] court err in denying [Appellant's] motion for a new trial for violation of due process, when the jury failed to make any finding of fact that [Appellant] was read his implied consent warnings?

Appellant's Brief at 4.[7]

Appellant first claims that he is entitled to a limited new trial, as the trial court erred in instructing the jury on what constitutes a "refusal" to submit to chemical testing. We are constrained to agree.

Our Supreme Court has held:

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review

---

**6.** The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within his Rule 1925(b) statement, Appellant listed both of the issues he currently raises on appeal.

**7.** For ease of discussion, we have re-numbered Appellant's claims on appeal.

. contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher,* 604 Pa. 493, 986 A.2d 759, 792 (2009) (internal citations and quotations omitted); *see also Commonwealth v. Ford–Bey,* 504 Pa. 284, 472 A.2d 1062, 1064 (1984) ("[b]ecause jury instructions are the principal medium for communicating to the jury the legal bases upon which its verdict is to rest, they should be clear, concise, accurate and impartial statements of the law written in understandable language and delivered in conversational tone which will be of helpful guidance to the jurors") (internal quotations and citations omitted).

As Appellant argues, in this case, the factual determination that he "refused" to submit to a chemical test caused an "increase[ ] in the penalty for [his DUI conviction] beyond the prescribed statutory maximum." *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Thus, according to Appellant, the issue regarding his refusal needed to be submitted to the jury and

proven beyond a reasonable doubt. *Id.* Yet, according to Appellant, the trial court's jury charge failed to "accurately and adequately" describe the law regarding what constitutes a valid "refusal" to submit to a chemical test. Specifically, Appellant claims, precedent from this Court holds that a refusal can only occur **after** the arresting officer has provided the defendant with his implied consent warnings. As such, Appellant claims that the warnings constitute an essential component of the "refusal." Moreover, Appellant argues, since the implied consent warnings constitute an essential component of a "refusal," *Apprendi* demands that the trial court submit to the jury—and the Commonwealth prove beyond a reasonable doubt—the issue of whether the officer informed Appellant of the requisite warnings. Appellant claims that, when the trial court rejected his proposed jury instruction and then failed to instruct the jury on the requisite warnings, the trial court committed an error of law.[8, 9] We agree.

**8.** Throughout these proceedings, Appellant has claimed only that the "implied consent" warnings are an essential component of a valid refusal. Thus, Appellant has never claimed that—before the jury could determine that he "refused" to submit to chemical testing—the jury was also required to determine, beyond a reasonable doubt, that the officer "advise[d] [Appellant] that in making th[e] decision [of whether to submit to chemical testing, Appellant did] not have the right to speak with counsel, or anyone else ... and further, if [Appellant] exercise[d] his right to remain silent as a basis for refusing to submit to testing, it [would] be considered a refusal and [Appellant would] suffer the loss of his driving privileges." *Scott,* 684 A.2d at 545. Therefore, we will only consider whether the implied consent warnings constitute an essential component of a "refusal" and whether *Apprendi* demands that the jury determine that the officer informed Appellant of the implied consent warnings.

**9.** During the pendency of this appeal, the United States Supreme Court decided *Alleyne*

*v. United States* and held that, where an "aggravating fact" increases a mandatory minimum sentence, "the fact is an element of a distinct and aggravated crime. [The fact] must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States,* — U.S. —, — 133 S.Ct. 2151, 2162–2163, 186 L.Ed.2d 314 (2013). *Alleyne* thus expanded "*Apprendi's* basic jury-determination rule to mandatory minimum sentences." *Id.* at 2167 (Breyer, J., concurring). On appeal, Appellant has based his claim solely upon *Apprendi* and the fact that the jury's finding of "refusal" increased his **statutory maximum** penalty. As such, in this opinion, we will concentrate our analysis upon *Apprendi's* basic holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 489, 120 S.Ct. 2348.

Initially, the factual finding regarding Appellant's "refusal" to submit to a chemical test unquestionably caused an "increase[ ] in the penalty for [Appellant's DUI conviction] beyond the prescribed statutory maximum." *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

In this case, Appellant was convicted of violating 75 Pa.C.S.A. § 3802(a)(1)—which prohibits an individual from operating a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving." 75 Pa. C.S.A. § 3802(a)(1). Since, at the time Appellant was driving, Appellant was involved in an accident where both he and his passenger were injured—and since Appellant had one prior DUI conviction—Appellant's current DUI conviction would have, standing alone, constituted an ungraded misdemeanor. 75 Pa.C.S.A. § 3803(b)(1).[10] Section 3803(b)(1) prescribes the statutory maximum penalty for such a conviction to be six months' imprisonment; Section 3804(b)(2) declares that the mandatory minimum term of imprisonment for the conviction is 30 days in jail. 75 Pa.C.S.A. §§ 3803(b)(1) and 3804(b)(2).

However, the jury also determined that Appellant "refused" to submit to a chemical test. Since this was Appellant's second DUI conviction within the preceding ten years, the jury's determination that Appellant refused to submit to chemical testing increased the grade of Appellant's DUI conviction from an ungraded misdemeanor to a misdemeanor of the first degree. *See* 75 Pa.C.S.A. § 3803(b)(4).[11] The jury's "refusal" determination also increased Appellant's statutory maximum penalty from six months' imprisonment to five years' imprisonment and increased Appellant's mandatory minimum penalty from 30 days in jail to 90 days in jail. *See* 75 Pa.C.S.A. §§ 3803(b)(1) and 3804(c)(2); 18 Pa.C.S.A. § 1104(1) (prescribing the statutory maximum penalties for misdemeanors). Indeed, Appellant's sentence of 30 to 60 months in prison—while falling in the standard range for a first-degree misdemeanor—would far exceed the statutory maximum penalty for an "unenhanced" general impairment conviction. Therefore (and as the trial court and the parties recognized), since Appellant's alleged "refusal" to submit to a chemical test "increase[d] the penalty for [Appellant's DUI conviction] beyond the prescribed statutory maximum," the issue concerning Appellant's alleged "refusal" needed to be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.[12]

In the case at bar, the trial court attempted to submit the issue of Appellant's alleged refusal to the jury. However, as

**10.** 75 Pa.C.S.A. § 3803(b)(1) provides:

An individual who violates section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or in damage to a vehicle or other property, or who violates section 3802(b), (e) or (f) **and who has no more than one prior offense** commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under section 3804.

75 Pa.C.S.A. § 3803(b)(1) (emphasis added).

**11.** 75 Pa.C.S.A. § 3803(b)(4) declares:

An individual who violates section 3802(a)(1) **where the individual refused testing of blood or breath ... and who has one or more prior offenses** commits a misdemeanor of the first degree.

75 Pa.C.S.A. § 3803(b)(4) (emphasis added).

**12.** Again, we have concentrated our analysis upon *Apprendi's* basic holding. However, we note that—since the finding of a "refusal" increased Appellant's mandatory minimum sentence—*Alleyne* also demands that the fact of a "refusal" "be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, —— U.S. at ——, 133 S.Ct. at 2162–2163.

Appellant claims—and as we are constrained to hold—the trial court failed to properly define the term "refusal." In particular, the trial court failed to instruct the jury that, before they could find that Appellant "refused" to submit to a chemical test, the jury needed to determine that the arresting officer had provided Appellant with his implied consent warnings. As such, the trial court did not properly submit the issue of Appellant's refusal to the jury and we must, therefore, vacate Appellant's judgment of sentence in part and remand for a new trial, limited to the issue of whether Appellant "refused" to submit to a chemical blood test. We will explain.

In relevant part, Pennsylvania's "implied consent" statute provides:

**(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of ... 3802 (relating to driving under influence of alcohol or controlled substance) ...

. . .

**(a) Suspension for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply: . . .

. . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547.

As can be seen from the above, Section 1547 does not enhance the penalties for a DUI conviction. Rather, the statute simply provides that, if a "person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses," the Department of Transportation must suspend the driver's operating privileges. The statute continues and—under the heading "[s]uspension for refusal"—recites the two implied consent warnings.

As relevant to the case at bar, the enhanced penalty provisions for refusing to submit to a chemical test are found at both 75 Pa.C.S.A. § 3803(b)(4) and 75 Pa.C.S.A. § 3804(c). Section 3803(b)(4) relates to the grading of the underlying DUI offense and provides:

An individual who violates section 3802(a)(1) where **the individual refused testing of blood or breath ... and who has one or more prior offenses** commits a misdemeanor of the first degree.

75 Pa.C.S.A. § 3803(b)(4) (emphasis added).

Section 3804(c) provides the mandatory minimum penalties for the DUI conviction. It declares:

**Incapacity; highest blood alcohol; controlled substances.**—**An individual who violates section 3802(a)(1) and refused testing of blood** or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:

. . .

(2) **For a second offense,** to:

(i) undergo imprisonment of not less than 90 days;

(ii) pay a fine of not less than $1,500;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S.A. § 3804(c) (emphasis added).

From a plain reading of the above statutes, one could plausibly argue that—for Section 3803(b)(4) and Section 3804(c) purposes—a "refusal" **does not** require the issuance of the implied consent warnings. First, the implied consent warnings are contained only in 75 Pa.C.S.A. § 1547 and the warnings are found in the subpart of Section 1547 relating to the suspension of operating privileges. *See* 75 Pa.C.S.A. § 1547(b). Further, the relevant statutes do not expressly provide that the implied consent warnings are a necessary component of a "refusal." Indeed, the references to the implied consent warnings found in Section 1547(b)(2) appear to **presuppose** a "refusal." Specifically, Section 1547(b)(2) declares that the requesting officer has a duty to inform the individual that "the person's operating privilege will be suspended **upon refusal** to submit to chemical testing" and that "if the person **refuses** to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c)." 75 Pa.C.S.A. § 1547(b)(2) (emphasis added). Thus, since the implied consent warning provisions in Section 1547 appear to presuppose a "refusal," one could argue that—under the plain language of the statutory scheme—a "refusal" does not require the issuance of the implied consent warnings.

Nevertheless, in *Commonwealth v. Xander*, this Court specifically held that issuance of the implied consent warnings is a necessary prerequisite to a valid "refusal" under Section 3804(c). *Commonwealth v. Xander*, 14 A.3d 174 (Pa.Super.2011).

In *Xander*, after the defendant was arrested for DUI, the officer requested the defendant to submit to a chemical test of her blood. The defendant became unruly and disruptive and, as a result, the officer did not provide the defendant with the implied consent warnings. *Id.* at 175. The defendant proceeded to a jury trial, during which time the Commonwealth "presented evidence that [the defendant] had been driving under the influence of alcohol, and averred that [the defendant] had refused chemical testing." *Id.* at 176. At the conclusion of trial, the trial court submitted to the jury the issues of whether the defendant committed the crime of DUI and whether the defendant "refused to give a [blood] sample for testing." *Id.* The jury answered both questions in the affirmative. *Id.*

Following the jury's verdict, the defendant filed a post-trial motion and claimed that "the Commonwealth should have been precluded from seeking an enhanced penalty pursuant to [Section] 3804(c) because [the defendant] had not been given refusal warnings pursuant to [Section] 1547(b)(2)." *Id.* The trial court agreed with the defendant and, thus, the trial court declined to impose the enhanced DUI penalties for

"refusing" to submit to chemical testing. Instead, the trial court sentenced the defendant to a term of five days to six months in jail.

The Commonwealth appealed to this Court and claimed that the trial court erred in concluding that the implied consent warnings were required components of a "refusal." We held that the trial court was correct and that the warnings were indeed components of a valid "refusal." As we concluded:

> the General Assembly specifically included a requirement in § 1547(b)(2)(ii) that the police warn arrestees of the enhanced penalties for a refusal [of chemical testing. Therefore,] a "refusal" for purposes of § 3804(c) necessarily requires a knowing refusal insofar as the police must have provided the arrestee with the warnings beforehand.
>
> . . .
>
> [The arresting officer] was required to provide [the defendant] with § 1547(b) warnings before [the defendant] could receive the enhanced penalties for DUI pursuant to § 3804(c).

*Id.* at 179 (internal quotations and citations omitted) (emphasis added).

*Xander* binds this Court. Indeed, while *Xander* specifically interpreted the term "refusal" under 75 Pa.C.S.A. § 3804(c), we note that the term "refusal" is used in an identical fashion in both 75 Pa.C.S.A. § 3803(b)(4) and 75 Pa.C.S.A. § 3804(c).

Thus, the *Xander* holding applies equally to the "grading" provision of the DUI statute and to the "penalties" provision of the DUI statute.

As applied to the case at bar, since the *Xander* Court held that the implied consent warnings are a necessary component of a valid "refusal," *Apprendi* demands that the trial court submit to the jury—and the Commonwealth prove beyond a reasonable doubt—the issue of whether the officer informed Appellant of the requisite warnings. Certainly, *Xander* holds that—in the absence of such a finding—the jury has not validly determined that Appellant "refused" to submit to chemical testing for purposes of the DUI sentencing enhancement statutes.

Here, Appellant proposed a jury charge which would have instructed the jury that, before they could find that Appellant "refused" to submit to chemical testing, the jury was required to first conclude—beyond a reasonable doubt—that the officer issued the implied consent warnings. The trial court rejected the proposed charge and then, in its instruction, the trial court did not inform the jury that the issuance of the implied consent warnings was a necessary component of a "refusal."[13] Pursuant to *Xander*, this constitutes error. We must therefore vacate Appellant's judgment of sentence in part and remand for a new trial, limited to the issue of whether Appellant "refused" to submit to a chemical blood test.[14,15]

13. We note that the trial court's jury instruction on "refusal" was taken from the section of Pennsylvania's Suggested Standard Criminal Jury Instruction titled "**Relevance** of Refusal to Submit to Testing." Pa.S.S.J.I. (Criminal) § 17.6502C (2012) (emphasis added). True to its title, the suggested standard jury instruction informs the jury that—if they believe the defendant refused to submit to a chemical test—the jury may both consider and weigh the fact of refusal in "deciding whether the defendant was under the influence of alcohol." *Id.* (emphasis added). However, the section does not instruct the jury on the **components** necessary to **prove** a "refusal"—and there appears to be no Suggested Standard Criminal Jury Instruction that does so.

14. Obviously, our disposition does not alter Appellant's conviction for violating 75 Pa. C.S.A. § 3802(a)(1).

Judgment of sentence vacated in part as directed. Case remanded. Jurisdiction relinquished.

COLVILLE, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY COLVILLE, J.

I concur with the Majority's determination that the trial court wrongly instructed the jurors as to what constitutes a refusal to submit to chemical testing. However, I disagree with the Majority's decision in its Footnote 14 that the improper instruction regarding refusal should not alter Appellant's DUI conviction. Rather, for the following reasons, I would vacate Appellant's sentence and conviction for DUI and remand for a new trial on the DUI charge.

As the Majority rightly acknowledges in its Footnote 13, jurors may weigh and consider the fact of refusal when determining whether a defendant was under the influence of alcohol. Indeed, in the present case, the trial court's final charge to the jurors included the following remarks:

> The Commonwealth argues that the testimony tending to show that [Appellant] refused to give a sample of his blood indicates that he was conscious that he was guilty of driving under the influence. The defense attorney argues that [Appellant] did not refuse to give the sample, or this evidence means no such thing. If you believe that [Appellant] was asked for and refused to give a sample of his blood for testing, you may consider that fact along with all the other relevant evidence when you are deciding whether [Appellant] was under the

influence of alcohol. Give [Appellant's] refusal whatever weight and meaning you think it deserves.

N.T., 10/31/12, at 138–39.

Because the jurors in this case were not properly instructed as to what constitutes a refusal, they were not fully equipped to decide whether Appellant was under the influence of alcohol. Therefore, I would vacate Appellant's sentence and conviction for DUI and would remand for a new trial on the DUI count in its entirety. Thus, while I concur in remanding this case for a new trial, I dissent from the decision to limit the new trial to the issue of refusal.

15. Our disposition has rendered Appellant's second issue on appeal moot. *See Johnson v. Martofel*, 797 A.2d 943, 946 (Pa.Super.2002) ("[t]he appellate courts of this Commonwealth will not decide moot or abstract questions except in rare instances.... An issue

before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect"). As such, we will not consider Appellant's second issue on appeal.