J-S55039-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM LEE BROWN, | : | |
| | : | |
| Appellant | : | No.  601 WDA 2015 |

Appeal from the Judgment of Sentence Entered March 26, 2015,
in the Court of Common Pleas of Fayette County,
Criminal Division, at No(s): CP-26-CR-0000848-2014

BEFORE:    FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 06, 2015**

William Lee Brown (Appellant) appeals from a judgment of sentence entered after a jury convicted him of driving under the influence of marijuana and the trial court convicted him of failing to drive vehicle at safe speed, careless driving, and direct criminal contempt.  We affirm.

The trial court summarized the background underlying this matter as follows.[1]

> On December 29, 2014, Pennsylvania State Trooper Patrick Egros and Trooper Josh Mrosko responded to a report of a vehicle crash on New Salem Road, Fayette County.  Both Troopers were dressed in full uniform and drove a marked police vehicle.  Upon arriving at the scene, the Troopers observed a black Kia Optima car [lying] on its roof.  Appellant was observed sitting in the back of an ambulance, and it was determined that he was the driver of the Kia Optima involved in the crash.

---

[1] We have broken up the trial court's opinion into several paragraphs.

*Retired Senior Judge assigned to the Superior Court.

Appellant was taken to Uniontown Hospital and an accident report was created by the Troopers. Appellant was met at the Uniontown Hospital by the Troopers, and was given the standard form DL-26, or **O'Connell** warnings,[2] in an attempt to obtain a statement and retrieve a blood sample from Appellant. Appellant refused to submit to a blood test and upon release from the hospital, was transferred to the Pennsylvania State Police barracks for an interview and fingerprinting.

Appellant gave a written statement to the Troopers following acknowledgement of his **Miranda** rights and by signing the DL-26 form. [In that statement, Appellant admitted to smoking marijuana before driving on December 29, 2014.]

On January 5, 2015, Appellant was convicted by a jury of driving under the influence of a controlled substance, a first

---

[2] This Court previously has explained that

[t]he **O'Connell** warnings were first pronounced in **Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell**, 521 Pa. 242, 555 A.2d 873 (1989). In a later opinion, our Supreme Court explained both the **O'Connell** warnings and the reasoning behind the warnings:

in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the **O'Connell** warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his **Miranda** rights[ pursuant to **Miranda v. Arizona**, 384 US 432 (1966)].

**Commonwealth v. Barr**, 79 A.3d 668, 670 n.4 (Pa. Super. 2013) (citation omitted).

- 2 -

degree misdemeanor. [The trial court convicted him of failing to drive vehicle at safe speed and careless driving. At his sentencing hearing, Appellant became uncooperative and started yelling obscenities. After warning Appellant several times to cease his behavior and informing him that the court could find him in contempt, the court found Appellant in contempt.]

[For the DUI conviction,] Appellant was sentenced to undergo imprisonment at a State Correctional Institution for a period of not less than one [] year nor more than two [] years, with time served from March 11, 2014 to March 14, 2014. [As to the contempt conviction, the court sentenced Appellant to serve three to six months in prison consecutive to the DUI sentence. The court ordered no further punishment on the remaining convictions.] Appellant's operator's license was suspended for a period of [18] months. Appellant filed this timely appeal thereafter. [Appellant and the trial court complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 6/11/2015, at 1-2 (footnote omitted).

In his brief to this Court, Appellant asks us to consider the questions that follow.[3]

> [1.] Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant was driving, operating, or in actual physical control of the vehicle at the time of the accident?
>
> [2.] Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant was driving, operating, or in actual physical control of the vehicle with any amount of a Schedule I substance in Appellant's blood?
>
> [3.] Did the lower court err in admitting Appellant's written confession into evidence when no independent evidence was presented by the Commonwealth to establish the commission of the alleged offense?

---

[3] We have reordered Appellant's issues for ease of discussion.

[4.]   Did the Commonwealth improperly utilize two of its peremptory challenges to strike the only two [] African Americans on the prospective jury panel in violation of the Equal Protection Clause and **Batson v. Kentucky**, 476 U.S. 79 [] (1986)?

[5.]   Did the sentencing court impose a manifestly unreasonable and excessive sentence by sentencing Appellant to a consecutive term of three [] to six [] months for the offense of direct contempt?

Appellant's Brief at 8 (unnecessary capitalization omitted).

The jury convicted Appellant of violating 75 Pa.C.S. § 3802(d)(1)(i), which provides as follows.

**(d)  Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1)  There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act[.]

75 Pa.C.S. § 3802 (footnote omitted).  Marijuana is a Schedule I controlled substance.  35 P.S. § 780-104(1)(iv).

In support of the first two issues listed above, Appellant argues that the Commonwealth failed to offer sufficient evidence to prove that he violated subsection 3802(d)(1)(i).  Appellant's Brief at 20-22.  More specifically, he claims that the only evidence presented by the Commonwealth to establish that he operated a vehicle on the night in question with a Schedule I controlled substance in his blood was his written

- 4 -

confession. Appellant "contends that the trial court erred in admitting [the confession] into evidence." *Id.* at 21. Thus, it would seem that Appellant is asking this Court to review the sufficiency of the evidence admitted at trial on a diminished record. Our standard of review does not allow us to do so.

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. **Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.** Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

> **Furthermore, [i]n evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct.**

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (emphasis added) (citations and quotation marks omitted).

The Commonwealth presented to the jury Appellant's statement wherein he admitted to smoking marijuana before driving and wrecking the Kia Optima on the night in question. N.T., 1/5/2015, at 41-42. The jury clearly believed this statement, and the statement was sufficient to establish that Appellant violated 75 Pa.C.S. § 3802(d)(1)(i). Consequently, the first two issues warrant no relief.

Appellant does raise an evidentiary issue regarding the admissibility of his confession. At trial, before the Commonwealth introduced Appellant's statement into evidence, Appellant objected on the basis of the *corpus delicti* rule, claiming that the Commonwealth had yet to establish that a crime had been committed. The trial court overruled that objection. On appeal, Appellant argues that the court erred in this regard. Appellant's Brief at 16-19.

"The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion." **Commonwealth v. Dupre**, 866 A.2d 1089, 1097 (Pa. Super. 2005) (citation omitted).

> It is beyond cavil that, in this Commonwealth, a confession is not evidence in the absence of proof of the *corpus delicti*.... [W]hen the Commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime. "*Corpus delicti*" means, literally, "the body of a crime." The *corpus delicti* consists of the occurrence of a loss or

- 6 -

injury resulting from some person's criminal conduct. The *corpus delicti* rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency. Only then can the Commonwealth ... rely upon statements and declarations of the accused to prove that the accused was, in fact, the criminal agent responsible for the loss. The grounds on which the rule rests are the hasty and unguarded character [that] is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.

**Commonwealth v. Taylor**, 831 A.2d 587, 590 (Pa. 2003) (citations and some quotation marks omitted). Thus, before the Commonwealth could introduce into evidence Appellant's confession, it was required to establish that driving under the influence occurred.

Trooper Egros was the only witness to testify at Appellant's trial. Before the Commonwealth sought to introduce Appellant's statement, the trooper had testified that: the Kia Optima was flipped onto its roof; Appellant was the only non-emergency responder on the scene; Appellant was being treated in the back of an ambulance by emergency medical services personnel; while it had been raining out, the roads were free of snow and ice; Appellant was transported to the hospital for treatment; Appellant had received his **O'Connell** warnings; and Appellant had refused to submit to a blood test. This evidence was more consistent with a conclusion that the crash was caused by Appellant driving under the influence than with a conclusion that the crash was simply the result of an accident. **Commonwealth v. Friend**, 717 A.2d 568, 569-70 (Pa. Super.

1998) ("[T]he evidence must be more consistent with a crime than an accident, although the possibility of an accident need not be eliminated. The *corpus delicti* may be established by circumstantial evidence.") (footnote and citations omitted). Thus, we conclude that the evidence was sufficient to establish the *corpus delecti* for driving under the influence. Consequently, we are unconvinced that the trial court abused its discretion by overruling Appellant's objection.

Next, we address Appellant's claim that the trial court erred by overruling his **Batson** challenges to the Commonwealth's use of two of its peremptory strikes during jury selection. Appellant's Brief at 11-15. In short, Appellant contends that the trial court erred by concluding that the Commonwealth presented sufficient race-neutral reasons for striking from the jury pool two African Americans.

> In **Batson**, the U.S. Supreme Court held that the Equal Protection Clause forbids [a] prosecutor to challenge potential jurors solely on account of their race. [Our Supreme Court has] explained the framework for analyzing a **Batson** claim in [its] direct appeal opinion in **Commonwealth v. Harris**, 572 Pa. 489, 817 A.2d 1033 (2002):
>
>> [F]irst, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

\*\*\*

> The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

> If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test, *i.e.,* the ultimate determination of whether the opponent of the strike has carried his burden of proving purposeful discrimination. It is at this stage that the persuasiveness of the facially-neutral explanation proffered by the Commonwealth is relevant.

> [T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire,* is not as well positioned as the trial court is to make credibility determinations. There will seldom be much evidence bearing on the decisive question of whether counsel's race-neutral explanation for a peremptory challenge should be believed. [T]he best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

***Commonwealth v. Cook***, 952 A.2d 594, 602-03 (Pa. 2008) (citations, quotation marks, and footnote omitted).

The trial court addressed Appellant's claim of error, in relevant part, as follows.

- 9 -

During *voir dire*, Appellant, an African-American, raised **Batson** challenges to both of the Commonwealth's motions to strike the only two [] African-American jurors on the prospective jury panel.

\*\*\*

This [c]ourt believes that the denial of Appellant's **Batson** motions was proper. Appellant is in fact African-American, only two [] of thirty-five [] potential jurors were African-American, and the Commonwealth moved to strike both of those jurors, which this [c]ourt granted. However, the Commonwealth stated on the record that Juror #383, an African-American man, was struck based on a neutral non-racial reason, stating:

> Anticipating, of course, a **Batson** challenge to that, I will note for the record that my race-neutral reason which I present is his profession. He is listed as a technician and also he is a pastor in addition to a technician. Regardless of his race, I would strike the individual because pastors are sometimes much more forgiving and dealing in redemption rather than just applying facts to law as jurors.

The Commonwealth also stated on record the non-discriminatory reason behind striking Juror #296, an African-American man:

> ...I anticipate striking him, unless counsel strikes him, which I doubt is likely, because my second race-neutral reason for [Juror 296] is he actually checked the box that he was less likely to believe a police officer. Though he did not raise his hand and state it, as a prosecutor, I make it my point to strike all the jurors who say - who check that box while they're alone in their home, they're not kind of placed under the eye of the [c]ourt to stand up and say that they chose to check a box that he's less likely to believe police officers. [The Commonwealth's] case rests solely on the testimony of a police officer.

This [c]ourt denied Appellant's **Batson** challenge based on the Commonwealth's ability to articulate unbiased, non-discriminatory reasons for striking both Juror Numbers 383 and 296. Based on the stated facts and case law, this [c]ourt

- 10 -

concludes that the Commonwealth's neutral, non-discriminatory reasons for striking the only two [] African-American jurors are sufficient to overcome Appellant's Batson challenge….

Trial Court Opinion, 6/11/2015, at 5 (quotation marks omitted).

The record supports the trial court's findings of fact. Moreover, there is nothing in the record that convinces us that the court's decision to deny Appellant's *Batson* challenges was clearly erroneous. Thus, Appellant's issue warrants no relief.

Lastly, Appellant contends that his sentence for criminal contempt is manifestly unreasonable and excessive. Thus, Appellant challenges the discretionary aspects of his sentence.

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

While Appellant timely filed his appeal, his brief does not contain a concise statement of reasons relied upon for allowance of appeal. Moreover,

- 11 -

Appellant failed to preserve his challenge, as he did not lodge an objection to his sentence during the sentencing hearing, nor did he raise such a challenge in a post-sentence motion; thus, Appellant waived this issue. ***See Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) ("Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.").

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015