J-S51009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY LYNN STOUTER, JR. | : | |
| | : | |
| Appellant | : | No. 778 MDA 2018 |

Appeal from the Judgment of Sentence December 12, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000225-2017

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.: **FILED NOVEMBER 14, 2019**

Jeffrey Lynn Stouter, Jr. appeals *pro se* from the judgment of sentence imposed following his open guilty plea to one count of fleeing or attempting to elude a police officer, 75 Pa.C.S.A. § 3733(a.2)(2)(iii), and related offenses.[1] The charges were based primarily on an eighteen-minute car chase that occurred after Stouter refused to pull over. Police clocked Stouter driving at speeds substantially over a hundred miles an hour. The sentencing court imposed an aggregate sentence of not less than three-and-a-half nor more

---

[1] The trial court permitted Stouter to represent himself, as requested, after a **Grazier** hearing. **See** Trial Court Opinion, 10/05/18, at 1 n.1; **see also** Appellant's Brief, at 8.

than seven years of incarceration in a state correctional institution. On appeal, Stouter chiefly challenges his sentence as excessive. We affirm.

We derive the facts and the procedural history of this appeal from the opinions of the trial court and our independent review of the record.[2]

On October 30, 2017, Stouter entered an open plea of guilty to one count of fleeing or attempting to elude police, as a felony of the third degree, 75 Pa.C.S.A. § 3733(a); one count of flight to avoid apprehension, 18 Pa.C.S.A. § 5126(a); **twenty-six** summary driving offenses, including driving while operating privilege is suspended or revoked, 75 Pa.C.S.A. § 1543, and one count of receiving stolen property, 18 Pa. C. S.A. § 3925(a). Notably, this was Stouter's **twenty-second** conviction for driving under suspension or revocation.[3] The trial court recounted the facts of the case as follows:

> As described in the Affidavit of Probable Cause, [Stouter's] charges stemmed from a two-stage police pursuit begun in York County on December 12, 2016 [at approximately 8:37 in the evening], Lieutenant [Nicole] Palmer, [Pennsylvania State Police] York Station Commander, was operating an unmarked patrol vehicle on Route 30, York County, behind a white Nissan Maxima driven [eastbound] by [Stouter], when she observed the Maxima weave twice over the left fog line. At that point, the Maxima accelerated, and Lt. Palmer clocked [Stouter's] rate of speed at

---

[2] The trial court authored two opinions. The first opinion was dated June 22, 2018, and filed June 25, 2018. After this Court granted Stouter permission to file a supplemental statement of errors, the trial court filed a supplemental 1925(a) opinion, on October 5, 2018. The trial court incorporated its original 1925(a) opinion into its supplemental opinion. **See** Supplemental Opinion, 10/05/18, at 2 n.2.

[3] The trial court noted that Stouter's record of motor vehicle violations extended to thirty-six pages. **See** N.T. Sentence, 12/12/17, at 28.

105 miles per hour for over three tenths of a mile. [Stouter] crossed over into Lancaster County and then exited Route 30. Lt. Palmer, still following, activated the patrol car's emergency lights and siren to initiate a traffic stop. [Stouter] did not stop, but instead reentered Route 30 and began traveling westbound from Lancaster County towards York County, at a speed of 117 miles per hour. Continuing to pursue [Stouter], Lt. Palmer observed [Stouter's] vehicle pass both a tractor trailer and a passenger car on the right shoulder of Route 30 and then continue on to pass multiple vehicles on the left shoulder. The Lieutenant ultimately discontinued the pursuit after approximately four minutes, because of [Stouter's] rate of speed and the threat to safety of others.

Approximately three minutes later, Trooper Ryan Wildermuth, who had been alerted to the existence of the speeding Maxima and had set up a stationary patrol in a marked vehicle at the intersection of SR 462 and Kruetz Creek Road in York County, spotted the Maxima and immediately pulled behind it, activating the patrol car's emergency lights and siren. [Stouter] once again failed to stop, swerved around another trooper responding to assist, and then accelerated, with Trooper Wildermuth still in pursuit.

[Stouter] drove over spike strips set up to stop him at the intersection of SR 462 and SR 24. Despite damage to the front passenger tire, [Stouter] fled north on SR 24, running through two steady red lights and passing another vehicle over the double yellow line. At the intersection of Whiteford Road and North Hills Road, [Stouter] ran a stop sign, causing a collision with the patrol car of a responding trooper. [Stouter's] damaged front passenger tire became deflated and dislodged, yet [Stouter] continued to flee, driving on the right front tire rim, with sparks flying, against traffic down several one way streets in the city of York. At some point, [Stouter] stopped the vehicle to let out a female passenger, who unsuccessfully attempted to flee on foot, but then he drove away. The vehicular chase ended only when [Stouter], boxed in by other marked patrol cars, crashed into two parked vehicles. At that point, [Stouter] abandoned the car, which remained in drive, and fled on foot, followed by four troopers. The troopers ultimately located and apprehended [Stouter], who was hiding behind a car. Troopers later discovered a factory-packaged Xbox and Beats headphones in the backseat of the Maxima, which [Stouter], once

Mirandized, admitted he had bought from an unlicensed street dealer in the city of York for a discounted price.

Trial Court Opinion, 6/22/18, at 2-3.

The trial court sentenced Stouter on the charge of fleeing and eluding to a term of incarceration of not less than three-and-a-half nor more than seven years in a state correctional institution. In imposing sentence, the court confirmed on the record that it had the benefit of a pre-sentence investigation report. After a hearing, the court denied Stouter's amended motion for reconsideration of sentence. This timely appeal followed.[4]

On appeal, Appellant presents five overlapping compound questions, framed as two major questions and four subordinate questions, for our review:

(1) Whether the sentencing court erred as a matter of law and/or abused its discretion in imposing the statutory maximum term of 3½ to 7 years imprisonment on the charge of fleeing or attempting to elude a police officer, 75 Pa.C.S. §3733(a), graded as a felony of the third degree pursuant to 75 Pa.C.S. §3733(a.2)(2)(iii), where:

(A) As its justification for such a sentence, the sentencing court relied on Appellant's 21 prior offenses of driving while operating privilege suspended or revoked, 75 Pa.C.S. § 1543(e), thereby improperly enhancing Appellant's sentence the basis of prior convictions for which appellant did not have counsel;

(B) as further justification for such a sentence, the sentencing court relied on Appellant's prior conviction of an unrelated criminal offense in an unrelated case which led to Appellant's service of a "sentence in a state correctional institution," thereby improperly enhancing Appellant's

_____

[4] As already noted, both Stouter and the trial court complied with Pa.R.A.P. 1925.

sentence based on factors already taken into account in the applicable sentencing guideline range, particularly Appellant's prior record score, and amounted to impermissible "double counting";

(C) As additional justification for such a sentence, the sentencing court relied on materially-untrue assumptions and/or misinformation relating to the timing of Appellant's sentencing in an unrelated Snyder County case, finding Appellant had committed the offenses in the instant case despite having been sentenced in the Snyder County case less than (2) months prior; and

(D) The sentencing court found aggravation in things that "could have occurred" but did not, and which were risks inherently attending virtually all fleeing and eluding scenarios graded as a felony of the third degree pursuant to 75 Pa.C.S. §3733(a.2)(2)(iii)?

(2) Whether the offense of fleeing or attempting to elude a police officer, 75 Pa.C.S. §3733(e), graded as a felony of the third degree pursuant to 75 Pa.C.S. § 3733(8,2)(2)(iii), is unconstitutionally vague on its face and/or as applied to appellant, in, that the term "high speed chase" is insufficiently specific, undefined, and susceptible to arbitrary, capricious, and/or otherwise discriminatory application?

Appellant's Brief, at 5-6 (unnecessary capitalization omitted).

Appellant chiefly challenges the discretionary aspects of his sentence. He argues the sentencing court imposed an excessive sentence by impermissible reliance on improper factors. He maintains the sentencing court "double counted" certain prior convictions. He also claims the term "high speed chase" as used in the statute for the grading of the offense of fleeing and eluding is unconstitutionally vague. *See* Appellant's Brief at 11. We disagree.

Generally, when a defendant enters a guilty plea, he or she waives all defects and defenses except those concerning the validity of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed. **See Commonwealth v. Stradley**, 50 A.3d 769, 771 (Pa. Super. 2012). Nevertheless, the entry of a guilty plea does not preclude a petition for allowance of appeal of discretionary aspects of sentence subsequently imposed. **See Commonwealth v. Becker**, 557 A.2d 390, 392 (Pa. Super. 1989).

However, a challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **See Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa. Super. 2008). Prior to reviewing such a claim on its merits:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code . . . .

**Id.** (citations and quotations omitted); **see also** Pa.R.A.P. 2119(f).

Here, Stouter complied with the first two requirements. He preserved his sentencing issue by filing a petition to reconsider sentence, and after it

- 6 -

was denied, he filed a timely notice of appeal. He included a separate Pa.R.A.P. 2119(f) statement in his appellate brief. Therefore, we must determine whether he raises a substantial question.

This Court has found that a claim that the sentencing court improperly "double-counted" an appellant's prior criminal history when considering his sentence (because his past criminal convictions were already taken into account when his prior record score was calculated) raises a substantial question. **Commonwealth v. Goggins**, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*). Therefore, Stouter has presented a substantial question, and we will proceed to review the merits of his claims. Nevertheless, on independent review, we conclude that his claims lack merit.

Our standard of review for a challenge to the discretionary aspects of a sentence is well-settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.A.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. . . . Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider **any legal factor** in imposing a sentence in the aggravated range. The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)

(citations and internal quotation marks omitted) (emphasis added).

> In reviewing a sentence on appeal, the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases[,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781[(c)].

*Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa. Super. 2012).

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.
>
> * * *
>
> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the **defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation**. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's

character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Moury*, 992 A.2d 162, 169-71 (Pa. Super. 2010) (emphasis added) (citations and internal quotation marks omitted).

In this appeal, Stouter first argues that the sentencing court improperly enhanced his sentence for fleeing and eluding to the statutory maximum by relying on his twenty-one prior convictions for driving while his operating privilege was suspended or revoked. *See* Appellant's Brief, at 12-15. We disagree.

Preliminarily, as aptly noted by the Commonwealth, Stouter failed to raise this issue with the sentencing court. *See* Commonwealth's Brief, at 13 n.3.; *see also* N.T. Sentencing, 12/12/17; Motion for Reconsideration of Sentence, 12/22/17; N.T. Reconsideration of Sentence, 4/12/18. Accordingly, Stouter's claim is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Additionally, Stouter failed to identify in his brief where this issue was raised with the sentencing court. *See* Pa.R.A.P. 2117(c)(1)-(4), Statement of Place of Raising or Preservation of Issues; *see also* Pa.R.A.P. 2119(e), Statement of Place of Raising or Preservation of Issues. It is not the role of this Court to scour the record to find evidence to support Appellant's arguments. *See J.J. DeLuca Co. v. Toll Naval Assocs.,* 56 A.3d 402, 411 (Pa. Super. 2012). Accordingly, Stouter's first issue is waived for these reasons as well.

Moreover, the claim would not merit relief. In both of its opinions, the sentencing court clearly explained that it did not consider Stouter's twenty-one prior convictions for driving under suspension as grounds for the enhancement of his sentence, but as evidence of his flagrant disrespect for authority and his lack of amenability to rehabilitation. *See* Trial Court Opinion, 6/25/18, at 11-12; *see also* Supplemental 1925(a) Opinion, 10/05/18, at 2-3. Stouter's first issue is waived and would fail on the merits.

In his second issue, Stouter asserts the sentencing court's supposed "double counting" of recent offenses by reference to his latest incarceration in a state correctional institution, even though Stouter's conviction had been included in his prior record score. *See* Appellant's Brief, at 15-18. The sentencing court noted that the commission of his current offenses had occurred only a few months after his release from a state correctional institution. *See* N.T. Sentence, 12/12/17, at 29-30, 33.

The sentencing court cited this recent criminal history as evidence of Stouter's continuing adult criminal record (which at age forty-one had stretched over twenty years), personal characteristics, and lack of amenability to rehabilitation. *See id.* This consideration was well within the discretion of the sentencing court. *See Moury,* 992 A.2d at 169-71 (requiring sentencing court to consider particular circumstances of offense and character of defendant, including defendant's prior criminal record, age, personal characteristics and potential for rehabilitation). Stouter offers no controlling

authority to support his assertion that a sentencing court is prohibited from consideration of any offense merely because it has been factored into his prior record score. Stouter's second issue does not merit relief.

In his third issue, Stouter asserts that his sentence was based on "materially untrue assumptions." Appellant's Brief, at 19. Once again, Stouter fails to develop an argument based on reference to the record and pertinent authority that any such misguided reliance occurred. To the contrary, we agree with the sentencing court that Stouter's claim of sentencing based on facts not admitted is "patently false." Supplemental 1925(a) Opinion, 10/05/18, at 6. Stouter's third issue fails.

In his fourth issue, Stouter asserts the sentencing court erred by focusing on things that could have occurred during the chase but in fact did not. *See* Appellant's Brief, at 20-24. He maintains that the risk of injury was inherent in any occurrence of fleeing and eluding, which, he claims, should not have factored into a greater sentence. We disagree.

It was the duty of the sentencing court to consider, *inter alia*, the protection of the public. **See** 42 Pa.C.S.A. § 9721(b) ("In selecting from the [sentencing] alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the **protection of the public**, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.") (emphasis added).

Moreover, Stouter's argument fails to consider that even if the statutory elements of a crime have been established, the sentencing court still has the duty to fashion a sentence which properly reflects the seriousness of the actual violation, the "gravity of the offense." ***Id.***

Here, Stouter not only fled to elude the police. He drove recklessly down the highway, colliding with one police car at Whiteford Road and North Hills Road, and placing all other fellow travelers at risk. He also drove at high speeds the wrong way down one-way city streets in York. He exceeded over one hundred miles an hour. ***See*** N.T., Guilty Plea Hearing, 10/30/17, at 7 (Stouter agreeing to the factual basis set forth in the information); Information filed 2/6/17. He put the police who pursued him, as well as other drivers and their passengers who happened to be in his path of travel, at substantial risk of injury or death.

Stouter's fourth argument utterly fails to develop, or even suggest, a valid legal basis for the claim that because his reckless rampage did not result in the actual loss of life or serious bodily injury, it was somehow improper to factor his criminal behavior and the risks it created into his sentence.

Additionally, Stouter's reckless behavior **did** cause substantial property damage to the cars that were in the barricade, and the police car he previously hit. Stouter's issue lacks support in either the law or the facts. His fourth claim is frivolous.

Finally, in his fifth issue, Stouter claims that the term "high-speed chase" is unconstitutionally vague.[5] **See** Appellant's Brief, at 25-33. We disagree.

The constitutionality of a statute is a question of law. **See Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008). As with all questions of law, our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Mauk**, 185 A.3d 406, 409 (Pa. Super. 2018).

> [W]e begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S. § 1922(3). A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality.
>
> \* \* \*
>
> [T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

---

[5] Stouter argues that he did not waive his claim of unconstitutionality by his guilty plea, citing **Class v. United States**, 138 S. Ct. 798, 807 (2018). However, we need not decide whether this argument would prevail, because, as discussed in the text, even if we assume that Stouter's underlying claim survived his guilty plea, his constitutional challenge fails on the merits.

*Commonwealth v. Mayfield*, 832 A.2d 418, 421 (Pa. 2003) (case citations and internal quotation marks omitted).

In this appeal, Stouter's claim of vagueness relies chiefly on the dissent in *In re R.C.Y.*, 27 A.3d 227, 231-32 (Pa. Super. 2011). *See* Appellant's Brief, at 30-36.

In *In re R.C.Y.*, the Court addressed the scope of 75 Pa.C.S.A. § 3733(a.2)(2)(iii), Fleeing or attempting to elude police officer. Subsection (a.2)(2)(iii) of the statute, in relevant part, made the offense a third degree felony, increasing the penalty for a violation when the actor engaged in a "high speed chase." The *R.C.Y.* Court concluded that the Legislature (which had refrained from defining "high speed chase" in the statute) did not intend for the term to be construed literally; rather, it intended that "high-speed chase" be a term of art, having a practical, legal meaning "not closely bound by a literal definition." *In re R.C.Y.*, 27 A.3d at 230.

The dissent disagreed, reasoning that the term "high speed chase" has a common, usual meaning and thus should not be construed as a legal term of art. *Id.* at 231 (Fitzgerald, J., dissenting).

Here, Stouter argues, in effect, that if the *R.C.Y.* dissent disagreed with the Majority on what constitutes a high-speed chase, then he has proven vagueness that is constitutional in dimension. We disagree.

Preliminarily, Stouter's reliance on the learned Justice Fitzgerald's dissent in *In re R.C.Y.* is misplaced, as it carries no precedential value. *See*,

- 14 -

*e.g.*, *Commonwealth v. Davis*, 17 A.3d 390, 398 (Pa. Super. 2011) (applying the general rule that a decision lacks precedential value if it does not garner the support of a majority of the sitting judges).

Moreover, as a practical matter, Stouter's driving at speeds of over a hundred miles an hour in his unsuccessful effort to elude the police would plainly be prohibited under **either** the decision of the *R.C.Y.* majority, or Justice Fitzgerald's dissent.

The *R.C.Y.* Majority reasoned as follows:

> From this history, we draw two conclusions. First, that the legislature intended the enhanced penalties to protect the safety of the public in general and police officers in particular. Indeed, the first clause of the subsection is "endangers a law enforcement officer or member of the general public...." Clearly, the "mischief to be remedied" is the danger presented by certain methods of fleeing or eluding police officers while driving a motor vehicle at high speeds.
>
> Second, we conclude that the legislature did not intend for the term "high-speed chase" to be construed literally. Rather, it intended that "high-speed chase" be a term of art, having a practical, legal meaning that was not closely bound by a literal definition. The term "high-speed chase," far from being the primary focus of the subsection, was intended to merely require a different level of danger from the run-of-the-mill dangers posed by merely failing to stop when signaled to do so by a police officer. In other words, the legislature included this term to indicate that the enhanced penalties applied only in cases where the defendant's actions created an extraordinary danger to the public at large or to police officers.

*In re R.C.Y.*, 27 A.3d at 230.

Justice Fitzgerald's dissent reasoned in part as follows:

> I agree with the majority that in enacting the grading enhancement, the [Legislature] intended to remedy a mischief of

the danger to police officers and the public posed by drivers who attempt to flee or elude police at high speeds. It is also clear that the legislature did not affix a minimum numerical rate of speed, but instead allowed for court interpretation of the individual circumstances of each case.

*In re R.C.Y.*, 27 A.3d at 232 (Fitzgerald, J. dissenting).

[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

*Mayfield*, 832 A.2d at 422 (citations and internal quotation marks omitted).

Here, on independent review, we conclude that Stouter's argument, chiefly relying on citation to the *R.C.Y.* dissent, fails to meet the heavy burden to overcome the presumption of constitutionality. Nor does it establish that the statutory enhancement at issue is so indefinite that ordinary people cannot understand what "high speed chase" means, or what conduct is prohibited. None of his claims has merit. Stouter's claim of unconstitutionality fails on the merits.

We conclude that the sentencing court correctly considered the nature and circumstances of Stouter's offense, his criminal and driving history, personal characteristics, as well as the Sentencing Guidelines. *See* 42 Pa.C.S.A. § 9781(1). The court had the benefit of the PSI. Moreover, the court had ample opportunity to observe Stouter at his preliminary hearing, guilty plea hearing, and sentencing. *See id.*

- 16 -

The court's reasons for its sentence expressed an appropriate consideration of the protection of the public, the gravity of the offense as it related to the risks to the pursuing police and the community at large (in particular, other travelers), as well as Stouter's amenability to rehabilitation, or the lack of it. **See** 42 Pa.C.S.A. § 9721(b). We discern no proper basis on which to disturb the discretion of the sentencing court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2019