J-S02036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JACOB SINGER :
:
Appellant : No. 404 EDA 2021

Appeal from the Judgment of Sentence Entered January 15, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002391-2019

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED FEBRUARY 9, 2022**

Jacob Singer (Appellant) appeals from the judgment of sentence entered
in the Monroe County Court of Common Pleas following his jury trial *in
absentia* and convictions of, *inter alia*, fleeing or attempting to elude a police
officer (fleeing from police).[1] The jury found Appellant engaged in a "high
speed chase," resulting in the higher grading of this offense as a felony of the
third degree (F3). Appellant avers the trial court erred in denying his request
to include, in the jury instructions, language from the opinion in ***In re R.C.Y.***,
27 A.3d 227 (Pa. Super. 2011), which addressed the grading enhancement
and the phrase "high speed chase." We affirm.

---

[1] 75 Pa.C.S. § 3733(a), (a.2)(2)(iii).

Appellant's issue requires a detailed review of the underlying facts. The trial court aptly summarized:

On September 28, 2019, Trooper [Daniel] Thompson observed Appellant driving a motorcycle with an expired registration in the area of Route 209 and Municipal Drive in Middle Smithfield Township. [N.T., 10/26/20, Courtroom 3, at 24.[2]] Trooper Thompson, in a patrol vehicle, attempted to effectuate a traffic stop by activating his lights and siren. *Id.* at 25. Appellant failed to stop. In fact, he continued to travel . . . even as the trooper pulled his car into the next lane and drove side-by-side with the motorcycle. *Id.* at 26. As Appellant fled from the officer, he accelerated to speeds substantially above the posted speed limit.

A second police unit, driven by Corporal [Charles] Phelps and also occupied by Trooper [James] Poliskiewicz, stopped traffic ahead of Appellant in order to create a safe environment in which to stop the motorcycle. ·At that point, Appellant was continuing to flee from Trooper Thompson at 70 miles per hour . . . in a posted 45 mile per hour zone. *Id.* at 28-29. Corporal Phelps and Trooper Poliskiewicz exited their car and, by the positioning of their vehicle, their physical presence, and the use of lights, flashers, and hand signals attempted to stop Appellant. *Id.* at 28. Appellant slowed down for a moment, but then accelerated towards the two troopers who were forced to move aside to avoid being struck by the motorcycle. *Id.*

Corporal Phelps and Trooper Poliskiewicz got back into their patrol car and went in pursuit. Trooper Thompson also continued his pursuit.

While continuing at a high rate of speed, Appellant drove through a steady red light and onto Interstate 80. *Id.* He then sped up to 80 miles per hour in a posted 55 mile per hour zone. *Id.* at 31. Trooper Thompson was able to drive ahead of the motorcycle to slow down the other lanes of traffic in an attempt

---

[2] The trial court explained that due to COVID-19 pandemic protocols, "multiple courtrooms were used for trial[,]" and separate transcripts were produced for each courtroom's proceedings. Trial Ct. Op., 4/30/21, at 1-2 n.1.

to slow the motorcycle and force Appellant to exit the Interstate. The tactic worked and Appellant exited at Delaware Water Gap. *Id.* at 30.

Meanwhile, Corporal Phelps and Trooper Poliskiewicz got ahead of Appellant on the exit ramp and slowed to a stop in front of the motorcycle. *Id.* Even as Corporal Phelps stopped and began to exit his car, Appella[nt] refused to stop or slow down to a safer speed. Appellant drove into the door of the patrol vehicle, fell off his bike, and began to flee on foot. Appellant also failed to obey repeated verbal commands to stop. Ultimately, the troopers deployed their Tasers and were able to stop Appellant and take him into custody. *Id.* at 31. A search incident to the arrest revealed that Appellant had a knife, a hypodermic needle, and controlled substances in his possession. *Id.*

Trial Ct. Op. at 1-3.

Appellant was charged with fleeing from police, resisting arrest,[3] drug offenses, and summary traffic violations. While fleeing from police is generally graded as a misdemeanor of the second degree, this count was charged as an F3, based on the allegation Appellant "endanger[ed] a law enforcement officer . . . due to . . . engaging in a high-speed chase." *See* 75 Pa.C.S. § 3733(a.2)(1), (2)(iii). The case proceeded to a jury trial on October 26, 2020. The trial court noted, "The trial was held *in absentia* because Appellant refused to appear despite being given ample opportunity to do so." Trial Ct. Op. at 3.

The trial court summarized:

At the beginning of the trial, [Appellant's counsel] submitted a point for charge regarding the term "high speed chase," as used in 75 Pa.C.S.[ §] 3733(a.2)(2)(iii)[,] the grading enhancement provision of the Fleeing and Eluding statute[.] Specifically,

---

[3] 18 Pa.C.S. § 5104.

counsel [requested the trial court] to include language from the Superior Court's opinion in ***In re R.C.Y.***, 27 A.3d 227 (Pa. Super. 2011). [N.T., 10/26/20, Courtroom 7, at 17-18.]. Counsel asserted that without the language from ***R.C.Y.*** regarding "high speed chase," the jury would not sufficiently understand the meaning of the enhancement language. ***Id.*** at 37. Counsel's request was discussed several times, including during the charging conference.

Trial Ct. Op. at 3.

Ultimately, the court denied Appellant's request to include the language from ***In re R.C.Y.*** in its jury instruction. Following the jury instructions, but before the jury retired to deliberate, Appellant objected "to the fleeing instruction as [the trial court] gave it," again arguing that additional language from the ***In re R.C.Y.*** decision was necessary.[4] N.T., 10/26/20, Courtroom 3, at 151. The court declined to include that language. ***Id.*** at 152.

The jury found Appellant guilty of fleeing from police, specifically finding he "[e]ndangered a law enforcement officer . . . by engaging in a high-speed chase[.]" Verdict, 10/26/20, at 1. Thus, this count carried the enhanced grading of an F3. The jury also found Appellant guilty of resisting arrest, two counts of possession of a controlled substance (methamphetamine and

---

[4] Appellant has thus preserved his challenge to the jury instruction for our review. ***See*** Pa.R.Crim. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. . . ."); ***Commonwealth v. Knight***, 241 A.3d 620, 634 (Pa. 2020) ("As [the a]ppellant did not challenge the trial court's jury instructions or the verdict slip before the jury retired to deliberate, he has waived his challenge[.]").

suboxone), and possession of drug paraphernalia.[5] The trial court separately found him guilty of ten summary traffic offenses.

On January 15, 2021, the trial court imposed an aggregate sentence of three and a half to nine years' imprisonment, to be followed by three years' probation. Appellant did not file any post-sentence motions, but took this timely appeal. He subsequently complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[6]

Appellant raises one issue for our review:

Whether the Trial Court erred and abused its discretion in denying [Apellant's] Motion to give jury instructions to the jury on *In re R.C.Y.*, . . . 27 A.3d 227, 230 ([Pa. Super.] 2011) case at trial?

Appellant's Brief at 8.

We first note the relevant standard of review:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial

---

[5] 35 P.S. § 780-113(a)(16), (32).

[6] After Appellant's counsel filed a notice of appeal and the Rule 1925(b) statement, Appellant filed, on April 23, 2021, a *pro se* Post Conviction Relief Act (PCRA) petition with the trial court, alleging ineffectiveness of counsel. **See** 42 Pa.C.S. §§ 9541-9545. On April 28th, the trial court issued notice of intent to dismiss the petition, properly pointing out that it lacked jurisdiction to consider it. Order, 4/28/21, at 1. **See Commonwealth v. Moran**, 823 A.2d 923, 925 (Pa. Super. 2003) ("Once a notice of appeal has been filed, the trial court generally lacks jurisdiction to modify its sentence."). Nevertheless, the trial docket does not indicate any further action on this petition.

is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

***Commonwealth v. Barr***, 79 A.3d 668, 672-73 (Pa. Super. 2013) (citation omitted).

The Pennsylvania Vehicle Code[7] defines the offense of fleeing or attempting to elude police officer as follows:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S. § 3733(a).  This offense is generally graded as a misdemeanor of the second degree.  75 Pa.C.S. § 3733(a.2)(1).  However, Subsection (a.2) provides:

> [a]n offense . . . constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:
>
> > (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance); [or[8]]
>
> > \* \* \*
>
> > (iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

---

[7] 75 Pa.C.S. §§ 101-9805.

[8] The jury was also charged with determining whether Appellant was driving under the influence of a controlled substance; the jury found he was not. Verdict at 1.

75 Pa.C.S. § 3733(a.2)(2)(i), (iii).  As stated above, in the case *sub judice*, the jury found the second circumstance was established — that Appellant "endanger[ed] a law enforcement officer . . . due to . . . engaging in a high-speed chase."  Verdict at 1.

On appeal, Appellant avers the trial court abused its discretion in denying his point for charge to include reference to the decision in ***In re R.C.Y.***, 27 A.3d 227.  Appellant avers ***In re R.C.Y.*** "clarifies the aggravating circumstances associated with" fleeing from police, as it "thoroughly discusses how a high speed chase is a term of art having a practical, legal meaning, and that it was not closely bound to the literal definition of high speed chase."  Appellant's Brief at 14, 15.  Appellant states he had argued to the trial court that "there must be a high level of danger[,] as opposed to regular danger that possibly occurs when someone fails to immediately stop when signaled to do so" by police.  ***Id.*** at 15.  Appellant then claims "there was no testimony . . . that [he] ever put any law enforcement officers or the general public in danger of serious bodily injury or death[,]" and in fact, the Commonwealth's evidence showed that "he wasn't traveling at a dangerous rate of speed."  ***Id.*** at 16.  Appellant observes the Commonwealth did not "rebut[ ]" his point for charge, and concludes he would have been acquitted of this count "had the jury been properly instructed."  ***Id.*** at 11, 16.  No relief is due.

Preliminarily, we note the deficiencies in Appellant's argument. *See* Pa.R.A.P. 2119(a) (argument shall include "such discussion and citation of authorities as are deemed pertinent"). While the crux of his issue is the jury charge's lack of reference to *In re R.C.Y.*, Appellant fails to explain what language or principle from that decision should have been included. Indeed, he does not provide any further discussion of *In re R.C.Y.* than what we have summarized above. Appellant does not explain the facts of *In re R.C.Y.*, the issues presented, the Superior Court's analysis, nor the reasons why *In re R.C.Y.* should apply to this case. Furthermore, although Appellant's issue necessarily includes a detailed review of the facts, his brief fails to make any mention of the events of September 28, 2019. Instead, his chronological "statement of the case" begins with the charges filed against him, omitting any reference to the vehicle chase or his apprehension. *See* Appellant's Brief at 9-10. We remind Appellant's counsel that the failure to develop an argument, with citation to and analysis of relevant authority, waives the issue on review. *See Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006).

In any event, the trial court's opinion — which Appellant likewise fails to address on appeal — thoroughly reviewed the *In re R.C.Y.* decision and Appellant's arguments. For ease of review, we first summarize *In re R.C.Y.* In that case, a police officer observed a juvenile "drive through [a stop sign] without stopping." *In re R.C.Y.*, 27 A.3d at 228. The officer "engaged his

- 8 -

lights and . . . pursue[d]" the juvenile, who ran through five more stop signs[.]" *Id.* A second officer joined the pursuit, and in the juvenile's protracted attempt to evade apprehension: the juvenile, in his car, struck one officer's car and struck the other officer's leg, "pinning his leg between the" juvenile's car and the officer's car; one officer managed to break the juvenile's driver's window; the injured officer reached through the broken window in an attempt to turn off the vehicle; the juvenile continued to drive away, gaining speed, with the injured officer's arm still in the car; and the injured officer "had to roll away from the vehicle to avoid being run over." *Id.* Next, "a short chase" ensued, "involving at least two other officers," and the juvenile "was finally apprehended when his vehicle stalled." *Id.* Pertinently, the evidence showed the juvenile had not traveled faster than 35 miles per hour during the chase. *Id.* at 229.

The juvenile was charged with, *inter alia*, fleeing from police, with the enhanced grading of an F3. *In re R.C.Y.*, 27 A.3d at 228-29. The juvenile court adjudicated him delinquent on this charge and others. *Id.* On appeal to this Court, the juvenile challenged the sufficiency of the evidence, arguing that his less-than-35-miles-per-hour speeds precluded application of the enhanced grading provision of Section 3733(a.2)(2)(iii). *Id.* at 229.

This Court denied relief. First, the panel noted that "high speed" was not defined in the statute nor decisional authority. *In re R.C.Y.*, 27 A.3d at 230. The panel thus looked to the legislative history of Section

3733(a.2)(2)(iii), and noted: (1) the grading enhancement was added "in response to complaints about chases that endangered the public;" and (2) "the term 'high-speed chase' was intentionally left undefined." *Id.* The panel then

> conclude[d] that the legislature did not intend for the term "high-speed chase" to be construed literally. Rather, it intended that "highspeed chase" be a term of art, having a practical, legal meaning that was not closely bound by a literal definition. The term "high-speed chase," far from being the primary focus of the subsection, was intended to merely require a different level of danger from the run-of-the-mill dangers posed by merely failing to stop when signaled to do so by a police officer. In other words, the legislature included this term to indicate that the enhanced penalties applied only in cases where the defendant's actions created an extraordinary danger to the public at large or to police officers.

*Id.*

The *In re R.C.Y.* panel then determined the juvenile's "behavior was precisely the sort of mischief the legislature intended to remedy by adding subsection (iii)," and his "driving tactics . . . were anything but a run-of-the-mill failure to stop." *In re R.C.Y.*, 27 A.3d at 230-31. The panel thus affirmed the enhanced grading of the juvenile's adjudication of delinquency. *Id.* at 231.

In the case *sub judice*, the trial court found the facts in *In re R.C.Y.* were distinguishable from those in this case: *In re R.C.Y.* did "not involve a 'high speed chase' in the traditional, speed-based sense of that term[,]" and thus "additional instructions [were] needed." Trial Ct. Op. at 10. In this case, however, the court reasoned, "there [was] ample evidence of [Appellant]

fleeing from and leading the police on a dangerous chase at high speeds[.]" *Id.* Accordingly, "the term 'high speed chase' [was] easily understood by [the jury] and [thus did] not need amplification or additional definition." *Id.* The court concluded, "the language from *R.C.Y.* was unnecessary and would have" misled or confused the jury. *Id.*

We agree with the trial court. Appellant's bald claim — that "there was no testimony . . . that [he] ever put any law enforcement officers or the general public in danger of serious bodily injury or death[ and i]n fact, the testimony [was] that . . . he wasn't traveling at a dangerous rate of speed" — is belied by the record. *See* Appellant's Brief at 16. The trial court aptly summarized the evidence that in ignoring the officers' commands to stop: (1) Appellant fled at 70 miles per hour in a 45-mile per hour zone, and at 80 miles per hour in a 55-mile per hour zone; (2) Corporal Phelps and Trooper Poliskiewicz, who were on foot, "were forced to move aside to avoid being struck by [Appellant's] motorcycle;" and (3) Appellant "drove into the door of [a] patrol vehicle." *See* Trial Ct. Op. at 2-3.

Furthermore, we agree with the trial court that in reviewing the jury instruction as a whole, it "clearly, adequately, and accurately presented [the law] to the jury." *See Barr*, 79 A.3d at 672. The court noted the charge was consistent with the Suggested Standard Criminal Jury Instruction for fleeing from police. Trial Ct. Op. at 8; *see* Pa. SSJI (Crim) 17.3733 (fleeing or attempting to elude a police officer). The court instructed the jury that four

elements must be proven beyond a reasonable doubt: (1) Appellant was the driver of a motor vehicle; (2) he "was given a visual and audible signal by a police officer to . . . stop[;]" (3) he "failed to refused to bring his vehicle to a stop or fled or attempted to elude the pursuing police officer[;]" and (4) he acted "willfully, or in other words, . . . he was aware of the officer's signal to stop and refused to do so." Trial Ct. Op. at 7. The court then explained that if the jury found the elements of fleeing from police were established beyond a reasonable doubt, then it must further determine whether it found beyond a reasonable doubt that Appellant "endangered a law enforcement officer or member of the general public by engaging in a high speed chase." **Id.** On balance, the instruction did not mislead or confuse the jury, or include any error in conveying the law. **See Barr**, 79 A.3d at 672.

Accordingly, we conclude no relief is due on Appellant's claim, and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/09/2022

- 12 -