J-S41008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE LUIS NAVARRO | : | |
| | : | |
| Appellant | : | No. 467 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000990-2019

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED: FEBRUARY 14, 2023**

Jose Luis Navarro appeals from the judgment of sentence, entered in the Court of Common Pleas of Northumberland County, after he was found guilty, upon stipulation of facts, of driving under the influence (DUI) of a controlled substance.[1]  On appeal, Navarro challenges the trial court's failure to grant Navarro's suppression motion challenging a vehicle stop and subsequent consent to a blood test.  We affirm.

Navarro was charged with possession of a small amount of marijuana, DUI, speeding,[2] and failing to utilize his safety belt.  The charges stemmed

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. § 3802(d)(1)(i) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle [when there is in the individual's blood any amount of [a] Schedule I controlled substance[.]").

[2] 75 Pa.C.S.A. § 3362(a).

from an April 20, 2019 vehicle stop, effectuated by Trooper Allen T. Wolff of the Stonington State Police Barracks. Trooper Wolff testified that he stopped Navarro's vehicle because it was traveling at an excessive rate of speed—53 miles per hour in a 35 miles-per-hour speed zone. Trooper Wolff asked Navarro for his license, registration, and insurance when he approached the vehicle. As he interacted with Navarro, Trooper Wolff stated that he "sensed a strong odor of what [he] believed to be marijuana emitting from the vehicle" and observed that Navarro had "eyes [that] were glassy, like, red, like [] bloodshot." N.T. Suppression Hearing, 8/18/20, at 10. At that point, the trooper asked Navarro where the odor was coming from. Navarro replied that "he had recently smoked." *Id.* at 11. Trooper Wolff then asked Navarro if he would perform a series of field sobriety tests, to which Navarro replied, "yes." *Id.* Trooper Wolff testified that the Horizontal Gaze Nystagmus (HGN) test revealed that Navarro had "multiple signs of impairment," *id.*, and that there were "some clues" of impairment when Navarro performed the walk-and-turn and one-leg-stand tests. *Id.* at 11-12.

As a result of his performance on the sobriety tests, Trooper Wolff advised Navarro that he was being placed under arrest for suspected DUI. *Id.* at 12. For safety reasons, Trooper Wolff asked Navarro if he had anything on his person. *Id.* Navarro told the trooper that he had three pill bottles of marijuana on his person. *Id.* The substance in the bottles later tested positive for tetrahydrocannabinol (THC), the active ingredient in marijuana. *Id.* Trooper Wolff then placed Navarro in the rear passenger seat of his patrol

vehicle and asked him if he would consent to a blood draw. *Id.* at 13. Trooper Wolff twice read Navarro a DL-26B form,[3] a form that contains implied consent warnings for blood draws. *See Birchfield v. North Dakota*, 579 U.S. 438 (2016) (holding state may not criminalize motorist's refusal to comply with demand to submit to blood testing). Navarro's blood was drawn and later analyzed at a lab. A toxicology report returned positive findings for three forms of THC as well as amphetamines, barbiturates, opiates, and methanol.[4] *See* NMS Labs Report, 5/6/19, at 3.

On January 6, 2020, Navarro filed a pre-trial motion to suppress the evidence obtained from Trooper Wolff's motor vehicle stop, claiming that the stop was not based upon probable cause and that he did not voluntarily consent to the blood draw. On December 29, 2020, the trial court denied the motion. On October 25, 2021, Navarro was found guilty of all charges based upon stipulated facts. On February 28, 2022, the court sentenced Navarro to the costs of prosecution and $50 fine on each possession charge, as well as

_____

[3] *See* Commonwealth Exhibit-2 (signed section 1547 blood test warning form, dated April 20, 2019, certifying Trooper Wolff "READ the [] warnings to the operator[, Navarro,] regarding the suspension of his/her operating privilege and gave [Navarro] the opportunity to submit to blood test.") (emphasis in original).

[4] Two of the three forms of THC were active metabolites—major components of marijuana and cannabis. The third form was an inactive metabolite of THC, Delta-9-carboxy-THC, or THCC.

72 hours to six months in prison for DUI, with immediate parole after serving the minimum sentence.[5]

Navarro filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Navarro raises the following issues for our consideration:

> (1)     Whether the trial court erred in denying [Navarro's] motion to suppress evidence seized from his vehicle and his person after he was stopped by an officer of the Pennsylvania State Police[.]
>
> (2)     Whether [Navarro's] consent to the extraction of his blood for chemical testing was knowing, intelligent[,] and voluntary[.]

Appellant's Brief, at 8.

Navarro first argues that the trial court improperly concluded that his vehicle stop was based on reasonable suspicion, rather that the requisite probable cause. Thus, he claims the stop was invalid. He is entitled to no relief.

In ruling on Navarro's suppression motion, the trial court specifically made the following conclusions of law:

> (1)     A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. ***Commonwealth v. Conrad***, 892 A.2d 826, 829 (Pa. Super. 2006).

---

[5] The sentence was ordered to begin on April 4, 2022, with bail continuing on the condition that a post-sentence motion or appeal be timely filed.

- 4 -

(2)    This standard, less stringent than probable cause, is commonly known as reasonable suspicion. ***Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999).

(3)    In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. ***In re***[***:***] ***D.M.***, 781 A.2d 1161, 1163 (Pa. 2001).

Order, 12/29/20, at 2.

It is evident that the court's enumerated legal conclusions refer to Trooper Wolff's investigation of a suspected DUI *following* his legal car stop that was based upon probable cause. The record reveals that the trooper stopped Navarro for driving at an excessive rate of speed (53 miles per hour) in a posted 35-mile-per-hour zone[6] and that the radar gun used to clock Navarro's speed was certified for its accuracy. N.T. Suppression Hearing, 8/18/20, at 6 (Trooper Wolff testifying "stop was due to [Navarro] going 53 in a 35 mile-per-hour zone"); ***id.*** at 6-7 (Trooper Wolff testifying as to radar gun's accuracy); ***see also*** Commonwealth's Exhibit-1 (certificate of accuracy,

---

[6] Navarro seems to argue that because the Commonwealth did not establish that the speed limit of 35-miles-per-hour was posted on a "fixed or variable official traffic control device as required by [75 Pa.C.S.A.] § 3362(b) of the Vehicle Code," the stop was made without probable cause. We disagree. First, the Commonwealth is not required to prove the elements of speeding, beyond a reasonable doubt, at a suppression hearing. ***See*** Pa.R.Crim.P. 581(H). Rather, it must establish that the challenged evidence was not obtained in violation of Navarro's rights. ***Id.*** Here, where the trial judge found Trooper Wolff credible, and where the trooper testified that the stop occurred at a location in Upper Augusta Township that was a 35-mile-an-hour zone, and that he clocked Navarro from a stationary position, using a calibrated and certified radar device showing that Navarro was driving 53-miles-per-hour, we find this claim meritless.

dated February 20, 2019, for radar gun used to measure Navarro's speed). *See Commonwealth v. Salter*, 121 A.3d 987, 992-93 (Pa. Super. 2015) (if vehicle stopped for speeding, officer must possess probable cause because nothing more can be determined as to speed of vehicle when observed while traveling upon highway). Thus, we find no merit to his claim.

In his second issue, Navarro claims that his consent to have his blood drawn was not voluntary where, prior to agreeing to take the test, Trooper Wolff informed Navarro that: (1) he was requesting Navarro submit to a chemical blood test; (2) if he refused to submit to the test, his operating privileges would be suspended for at least 12 months and he would have to pay a restoration fee of up to $2,000; (3) he had no right to speak to any attorney while he was in custody; and (4) if he requested to speak to an attorney, it would be considered a refusal to take the test. Appellant's Brief, at 14.

A trial court must consider the totality of the circumstances when determining if a defendant's consent to a warrantless blood draw is voluntary. *Commonwealth v. Robertson*, 186 A.3d 440, 447 (Pa. Super. 2018). *Birchfield*, *supra*, "makes plain that police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent[;] whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question [of] whether the consent was valid." *Commonwealth v. Ennels*, 167 A.3d 716, 724 (Pa. Super. 2017) (emphasis in original). However, 75 Pa.C.S.A. § 1547(b)(2) requires a police officer tell an arrestee

of the consequences of a refusal to take a chemical test so that he or she can make a conscious choice. **Commonwealth v. Xander**, 14 A.3d 174 (Pa. Super. 2011) (concluding officer required to provide defendant with [75 Pa.C.S.A. §] 1547(b) warnings[7] before he could suffer enhanced penalties, which included civil consequences of suspension of operating privileges). Finally, a police officer has a duty to inform a motorist, who has been asked to submit to chemical testing, that the **Miranda** rights are inapplicable to a request for chemical testing under the Implied Consent Law. **Commonwealth v. O'Connell**, 555 A.2d 873 (Pa. 1989) (**O'Connell** warnings).

"Like any other search premised upon the subject's consent, a chemical test conducted under the implied consent statute is exempt from the warrant requirement only if consent is given voluntarily under the totality of the circumstances." **Commonwealth v. Myers**, 164 A.3d 1162, 1180 (Pa. 2017).

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

---

[7] Beginning on February 1, 2004, section 1547(b)(2)(ii) of the Motor Vehicle Code required a police officer to warn an individual arrested for suspected DUI that the individual's refusal to submit to a blood test would subject that individual to enhanced criminal penalties. 75 Pa.C.S.A. § 1547(b)(2)(ii).

*Commonwealth v. Miller*, 186 A.3d 448, 451 (Pa. Super. 2018) (citation omitted).

Instantly, Trooper Wolff testified that, after placing Navarro under arrest, he read Navarro the DL-26B form and *O'Connell* warnings. N.T. Suppression Hearing, 8/18/20, at 14-15. Trooper Wolff testified that Navarro had questions regarding the warnings, so the trooper read Navarro his warnings a second time. *Id.* at 13. Following this second reading, Navarro signed the consent form to have his blood drawn. *Id.* at 14. Navarro was then transported to Sunbury Hospital where his blood was drawn by a phlebotomist. *See* Affidavit of Probable Cause, 5/14/19 (Trooper Wolff averring Navarro was read *O'Connell* warnings,[8] consented to blood draw, and was transported to Sunbury Hospital, where Navarro signed DL-26B form and blood was drawn). Trooper Wolff testified that following the blood draw, the trooper signed a sticker on the bag containing Navarro's blood. *Id.* at 15. The bag was then sealed in a box and taken back to the state police barracks and placed into evidence. *Id.* At that point, Trooper Wolff's corporal took the blood sample and sent it to the lab in a sealed envelope for testing. *Id.*

---

[8] In *O'Connell*, *supra*, our Supreme Court held that when a motorist is asked to submit to chemical testing under the Implied Consent Law, the law enforcement officer making the request has a duty to explain to the motorist that his *Miranda* rights are inapplicable to such a request. *O'Connell*, 555 A.2d at 878. This admonition is commonly referred to as an "*O'Connell* warning."

Here, the trial court found Trooper Wolff credible when he testified that he read Navarro the DL-26B form and **O'Connell** warnings twice. Statement in Lieu of Opinion, 6/24/22, at 2. **See Commonwealth v. Clemens**, 66 A.3d 373, 378 (Pa. Super. 2013) ("It is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony[.]"); **Commonwealth v. Camacho**, 625 A.2d 1242, 1245 (Pa. Super. 1993) (because "credibility at a suppression hearing is an important determination best resolved through the court's personal observations, we will not reverse a suppression court's assessment of credibility absent clear and manifest error"). Moreover, there was no evidence presented that Navarro's consent to the blood draw was not voluntary or that he was threatened with enhanced punishment for refusing a blood test. **Id.** at 4. Thus, the court properly determined that suppression was not warranted on the basis that Navarro did not voluntarily consent to have his blood drawn after he was arrested.[9]

Judgment of sentence affirmed.

---

[9] Navarro cites to the dissent in **Commonwealth v. Bell**, 211 A.3d 761 (Pa. 2019), to support his argument that his consent to the blood draw was not voluntary. **Bell**, however, involved a defendant who refused a breath test—here, Navarro neither refused to be tested nor did he undergo a breath test. We, thus, do not find the case either relevant or dipositive of his issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2023